UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES ANDREW COGLEY,    :

    Plaintiff    :    CIVIL ACTION NO. 3:25-1938

v.    :    (JUDGE MANNION)

WELLPATH, LLC, *et al.*,    :

    Defendants    :

## MEMORANDUM

Currently before the Court are *pro se* Plaintiff James Andrew Cogley ("Cogley")'s application for leave to proceed *in forma pauperis* ("IFP Application"), motion to appoint of counsel, and motion seeking a ruling on his IFP Application and motion to appoint counsel. For the reasons stated below, the Court will deny Cogley's motions.

## I. BACKGROUND

Cogley, a convicted and formerly incarcerated state prisoner,[1] filed a complaint in the Court of Common Pleas of Centre County on October 6,

---

[1] According to the Pennsylvania Parole Board's Parolee Locator (https://inmatelocator.cor.pa.gov), Cogley was paroled from state incarceration on September 17, 2023.

2025. (Doc. No. 1-2.)[2] Cogley asserts claims under 42 U.S.C. §1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution as well as Pennsylvania state-law tort claims, including, *inter alia*, professional negligence/medical malpractice claims, against the following Defendants: (1) Wellpath, the Commonwealth of Pennsylvania Department of Corrections ("DOC")'s third-party medical provider for Pennsylvania State Correctional Institutions Camp Hill ("SCI Camp Hill"), Rockview ("SCI Rockview"), and Smithfield ("SCI Smithfield"); (2) the DOC; (3) Dr. Vernon Preston ("Dr. Preston"), the Medical Director at SCI Rockview; (4) David McKenna ("McKenna"), a physician's assistant at SCI Rockview; (5) Christina Brown ("Brown"), a medical provider at SCI Rockview; and (6) four (4) John Doe correctional officers at SCI Rockview ("CO Does"). (*Id.* at 1, 3–4.) For relief, Cogley seeks compensatory damages, punitive damages, declaratory relief, and "equitable relief to prevent similar violations in the future." (*Id.* at 16.)

---

[2] It does not appear that this is the date that Cogley commenced his action in the Court of Common Pleas. *See* (Doc. 11 at 1 (indicating that Cogley initiated the action by filing a praecipe for a writ of summons against Wellpath, LLC ("Wellpath") on August 16, 2023)); *see also* Pa. R. Civ. P. 1007 ("An action may be commenced by filing with the prothonotary: (1) a praecipe for a writ of summons, or (2) a complaint.").

Wellpath, Dr. Preston, McKenna, and Brown (the "Wellpath Defendants") removed the action from the Court of Common Pleas to this Court on October 25, 2025. (Doc. 1.) Both the Wellpath Defendants and the DOC have waived service, and their responses to Cogley's complaint are due on December 15, 2025, and December 26, 2025, respectively. (Docs. 3, 9.)

Cogley filed the IFP Application, a motion to appoint counsel, and a brief in support of the motion to appoint counsel on October 20, 2025. (Docs. 6–8.) On November 17, 2025, Cogley filed a motion seeking a ruling on the IFP Application and motion to appoint counsel. (Doc. 10.) A day later, the Wellpath Defendants filed a brief in opposition to Cogley's motion to appoint counsel. (Doc. 11.) The following day, Cogley filed a reply brief in further support of his motion to appoint counsel. (Doc. 12.) The IFP Application and Cogley's motions are ripe for disposition.

## II.   DISCUSSION

### A.   The IFP Application

Cogley's request for *in forma pauperis* status in this case is moot because the Wellpath Defendants, in removing the case to this Court, were required to pay, and did pay, the filing fee. *See* 28 U.S.C. § 1914(a) (requiring removing party to pay filing fee); (Docket Text Accompanying Doc. 1

- 3 -

(showing payment of fee)). Therefore, the Court will deny Cogley's IFP Application as moot.

### B.     Motion to Appoint Counsel

Cogley has no constitutional or statutory right to appointment of counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997). Nevertheless, the Court has discretion to request "an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Such a request should be made if circumstances indicate "the likelihood of substantial prejudice to [the plaintiff] resulting, for example, from [their] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984).

When evaluating the expenditure of the "precious commodity" of volunteer counsel, a court must first determine whether the plaintiff's case has some arguable merit in fact and law. *See Montgomery*, 294 F.3d at 499. If a plaintiff overcomes this threshold hurdle, then the court is to consider other factors, including: (1) the plaintiff's ability to present their own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such an

investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether expert testimony will be required; and (6) whether the plaintiff can retain and afford counsel. See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019) (citations omitted). This list, however, "is not meant to be exhaustive." Tabron, 6 F.3d at 157; see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,]" and that "[t]hey are not exhaustive, nor are they each always essential"). Rather, the court must determine on a case-by-case basis whether a request for appointed counsel is warranted. See Tabron, 6 F.3d at 157–58.

Here, presuming that Cogley's complaint has arguable merit, the Court will address each Tabron factor in turn. As explained below, the Court's review of those factors shows that appointing counsel is not warranted.

1. **Ability to Present His Case**[3]

In arguing that he cannot present his own case, Cogley focuses on his lack of legal training, "numerous [unspecified] procedural and evidentiary

---

[3] This factor is "[p]erhaps the most significant of Tabron's post-threshold factors . . . ." Montgomery, 294 F.3d at 501 (citing Tabron, 6 F.3d at 156); see also Tabron, 6 F.3d at 156 (describing the plaintiff's ability to present their case as "a significant factor").

requirements that cannot be met *pro se*," an inability to interpret his medical records, and his inability to obtain a certificate of merit ("COM") to prosecute his professional negligence claims as required by Pennsylvania Rule of Civil Procedure 1042.3(a). (Doc. 7 at 3.) These assertions are insufficient to show that Cogley is unable to present his own case.

When considering whether a plaintiff can present their own case, "courts should consider 'the plaintiff's education, literacy, prior work experience, . . . prior litigation experience[,' and] . . . whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone, and computer." *Parham*, 126 F.3d at 459. Here, Cogley provides no information about his education, literacy, prior work experience, prior litigation experience, or whether he has the necessary resources to prosecute this case. In addition, he does not identify any procedural or evidentiary requirements that he allegedly cannot satisfy in this case. Moreover, Cogley's representation about whether a *pro se* plaintiff can obtain a COM without assistance of counsel is simply wrong.

When proceeding on a professional negligence claim under Pennsylvania law, the Pennsylvania Rules of Civil Procedure provide that "the attorney for the plaintiff, **or the plaintiff if not represented**, shall file with the complaint or within sixty days after the filing of the complaint, a

[COM] signed by the attorney or party . . . ." Pa. R. Civ. P. 1042.3(a); *see also Tompkins v. PrimeCare Med., Inc.*, No. 19-cv-1089, 2019 WL 7049796, at * (W.D. Pa. Dec. 23, 2019) ("Compliance with Rule 1042.3 may be accomplished by the filing of a [COM] prepared by an unrepresented party provided [they have] obtained a written statement from an appropriate licensed professional that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable standards and that such conduct was a cause in bringing about the harm alleged."), *recons. denied*, 2020 WL 14037122 (W.D. Pa. Jan. 17, 2020). Thus, not only can Cogley file COMs while proceeding *pro se*, but he is obligated to do so.

The Wellpath Defendants point out that Cogley attempted to bring this action in the Court of Common Pleas of Mercer County prior to filing his complaint in the Court of Common Pleas of Centre County. *See* (Docs. 11 at 1 (referencing *Cogley v. Wellpath, LLC*, No. 2023-1714 (Mercer Cnty. Ct. Com. Pl.)); 12 at 3 (discussing prior Mercer County action)).[4] The Court of Common Pleas dismissed the action because Cogley was unable to secure a COM within sixty (60) days of filing the complaint. *See* (Docs. 11 at 1; 12

---

[4] It is unclear why Cogley did not mention this fact in his brief in support of his motion to appoint counsel.

at 3). Cogley argues that his inability to obtain a COM in his prior action supports his assertion that he cannot litigate this case without counsel. The Court disagrees.

Cogley alleges that despite his "diligent effort, no licensed medical provider will review or support the case while [he] is unrepresented." (Doc. 12 at 2.) However, other than identifying the "Medical Justice Alliance" as an entity that might be willing to help if he has counsel, see (Doc. 7 at 4), Cogley does not detail his efforts to obtain a COM. Without factual support for his assertions, it is just as likely that a medical provider does not believe that any Defendant's conduct deviated from the applicable standard of care as it is that they will not sign a COM because Cogley is unrepresented.

Overall, without additional information about Cogley and his efforts to obtain a COM, Cogley has not demonstrated that he cannot present his own case. To the contrary, Cogley's filings thus far indicate not only that he is literate and articulate, but that he can present his case and his legal arguments. In fact, his brief in support of his motion to appoint counsel and his reply brief are well organized, researched, and argued. Moreover, Cogley has not had any issues with complying with the applicable Federal Rules of Civil Procedure and the Court's Local Rules in presenting his case at this early stage. Furthermore, although Cogley raises claims relating to events

that allegedly occurred while he was incarcerated, he is no longer incarcerated and, consequently, does not face the same barriers affecting *pro se* prisoner plaintiffs when prosecuting their cases. *See Montgomery*, 294 F.3d at 502 (concluding that an ***incarcerated*** plaintiff proceeding on his first claim since being incarcerated demonstrated that they were unable to present their case because they "encountered multiple obstacles, both in the resistance of the defendants and in the intricacies of the discovery rules"). As such, the first *Tabron* factor weighs against the appointment of counsel.

### 2.    Complexity of the Legal Issues

"Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." *Parham*, 126 F.3d at 459 (citations omitted). Cogley contends that his case is legally complex because he raises Eighth Amendment deliberate-indifference-to-serious-medical-needs claims under Section 1983 as well as various state-law claims, including professional negligence claims. (Doc. 7 at 3–4.)[5] He also points out that because he presents federal and state claims, he will have to "navigat[e] dual procedural systems – the Federal Rules of Civil Procedure and Pennsylvania's specialized COM and expert-witness rules." (*Id.* at 3.)

---

[5] In his brief, Cogley asserts that he raises Fourteenth Amendment claims against Defendants. *See id.* at 3. It is unclear from the complaint that he raises such claims. *See* (Doc. 1-2 at 8–15).

Although the Court recognizes the rules Cogley will have to navigate, *see Parham*, 126 F.3d at 460 (explaining that "courts should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules" (citing *Tabron*, 6 F.3d at 156)), he does not identify any aspect of those rules rendering this case overly complex. It also is not apparent from Cogley's submissions that he will have difficulty understanding any rules, such as the discovery rules.

Cogley's Eighth Amendment deliberate-indifference-to-serious-medical-needs claim appears to present "relatively straightforward legal issues and is not unusually complex or complicated." *Gray v. Pa. Dep't of Corr.*, No. 21-cv-1221, 2021 WL 11108669, at *1 (M.D. Pa. Oct. 5, 2021). In fact, "[t]he vast sum of Section 1983 claims filed by *pro se* prisoners involve the Eighth Amendment and its deliberate indifference standard." *Id.* Thus, Cogley's Section 1983 claim, on its face, does not appear to present complex legal issues, at least at this stage.

As for Cogley's medical malpractice claim, the Third Circuit Court of Appeals has pointed out that "[a] medical malpractice case involves complex facts and medical records that even most lawyers struggle to understand." *Parham*, 126 F.3d at 460. Nevertheless, Cogley's medical malpractice claim relates to Defendants' alleged failure to, *inter alia*, send him for an MRI that

had been ordered due to his January 2021 MRSA infection in his L5 spinal disc pocket, and despite his vital signs and symptoms showing that further evaluation and testing was needed. *See* (Doc. 1-2 at 5–7). Such a claim does not appear to present complex legal issues. Also, even though Pennsylvania state-law imposes additional requirements on "a plaintiff asserting medical malpractice claims, . . . these requirements apply to all such claims whether filed by a prison or person at liberty," *Begandy v. Wellpath*, No. 21-cv-213, 2022 WL 22888807, at *3 (W.D. Pa. June 17, 2022), and Cogley has demonstrated his understanding of these requirements so far. Therefore, the second *Tabron* factor also does not weigh in favor of Cogley's request.

### 3. Extent to Which Factual Investigation Will Be Required and Cogley's Ability to Pursue Such an Investigation

Cogley asserts that "[s]ubstantial discovery is needed [in this case], including medical-record authentication, depositions of treating and supervisory personnel, and expert evaluation of the records." (Doc. 7 at 4.) He acknowledges having obtained his medical files from prison but contends that "his ability to conduct formal discovery, obtain affidavits, and depose witnesses is limited by lack of training and procedural access." (*Id.*)

This factor weighs against appointing counsel for several reasons. First, Cogley has already identified his need to obtain an expert and a COM, so this is not an instance where a lack of knowledge about procedural or

evidentiary requirements have prejudiced the plaintiff. Second, Cogley has already obtained his prison medical records, which are likely to be the main documentary evidence the parties rely upon in this case. Thus, it does not appear that this case will involve unusually burdensome discovery. Third, Cogley was paroled in mid-September 2023, so he has had almost two (2) years to obtain evidence pertaining to his case without having the obstacles confronted by incarcerated plaintiffs. *See Parham*, 126 F.3d at 460 ("The *Tabron* court noted that courts should consider a prisoner's predicament in attempting to obtain facts, i.e. the confines of prison." (citing *Tabron*, 6 F.3d at 156 and *Rayes v. Johnson*, 969 F.2d 700, 704 (8th Cir. 1992))). Finally, although Cogley is concerned about taking depositions of witnesses, his other filings in this case show that he is capable of pursuing those depositions and other discovery.

### 4. Extent to Which the Case is Likely to Turn on Credibility Determinations

"[W]hen considering the role of credibility determinations as a factor, 'courts should determine whether the case [will be] solely a swearing contest.'" *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 160). Here, Cogley argues that "[t]he case will depend heavily on whether medical and correctional staff acted with deliberate indifference or negligence," and "[s]uch claims inevitably turn on credibility." (Doc. 7 at 4.)

Cogley correctly points out that he will have to prove that Defendants acted with deliberate indifference or negligence. However, it is unclear at this stage that this case will turn into a "swearing contest." *Parham*, 126 F.3d at 160. Defendants have not yet filed responses to Cogley's complaint, and it is unclear whether they will challenge the facts as alleged in the complaint. It is possible that they will admit to some of his factual allegations (especially considering many of them appear to be based on his medical records) but argue that those allegations do not demonstrate deliberate indifference or a deviation from the applicable standard of care. Regardless, without more information about the contested issues in this case, the Court cannot find that the case will turn on credibility determinations. Therefore, this factor also weighs against appointing counsel.

### 5. Whether Expert Testimony Will Be Required

Cogley contends that he needs an expert to proceed on his medical malpractice/professional negligence claims. *See* (Doc. 7 at 4). The Court "recognize[s] the need for expert testimony in providing a claim based on medical injury." *Montgomery*, 294 F.3d at 505; *see Parham*, 126 F.3d at 460 ("A medical malpractice case involves complex facts and medical records that even most lawyers struggle to comprehend. Hence, most of these cases require expert testimony."). As such, Cogley's "need for an expert witness to

- 13 -

support his medical malpractice claims . . . favor[s] the appointment of counsel." *Begandy*, 2022 WL 22888807, at *3 (citations omitted).

### 6. Ability to Retain Counsel on His Own Behalf

Cogley contends that he is unable to retain counsel on his own behalf and points to his efforts to obtain counsel by reaching out to private attorneys, law clinics, and advocacy organizations. (Doc. 7 at 4.) He asserts that "[m]ost declined due to institutional bias against correctional-medical litigation or uncertainty over Wellpath LLC's bankruptcy implications." *Id.*

Although Cogley states that he has made substantial efforts in attempting to obtain counsel, he has not submitted any evidence of those efforts. In addition, he does not provide evidence showing that he is unable to afford counsel to represent him. Even if the Court considers the IFP Application, it is unclear that Cogley cannot afford private counsel. Therefore, this factor does not weigh in favor of appointing counsel.

### 7. Consideration of the *Tabron* Factors

After reviewing and balancing the *Tabron* factors, the Court will deny Cogley's motion for appointment of counsel without prejudice to him refiling it or the Court reconsidering the issue *sua sponte* if the circumstances so warrant. Although Cogley will need expert testimony for his medical malpractice claim, the other *Tabron* factors outweigh this need and do not

justify the appointment of counsel at this time. Nevertheless, because Cogley is proceeding *pro se*, the Court will consider any motions to extend the time for him to obtain COMs or identify experts in support of his claims. *See Begandy*, 2022 WL 22888807, at *3.

### C. Motion for a Ruling on the IFP Application and Motion to Appoint Counsel

After less than thirty (30) days from the filing of the IFP Application and his motion to appoint counsel, Cogley filed a motion seeking to have the Court rule on those submissions. (Doc. 10.) The Court will deny this motion, noting that such a motion is improper and, if Cogley is concerned about the deadline for him to file COMs expiring while the Court considered his submissions, he should have filed a motion seeking additional time to file COMs and not a request to expedite ruling on his motions. *See* Pa. R. Civ. P. 1042.3(d) ("The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days."); *see also id.*, Note ("There are no restrictions on the number of orders that a court may enter extending the time for filing a certificate of merit provided that each order is entered pursuant to a new motion timely filed and based on cause shown as of the date of filing the new motion.").

## III. CONCLUSION

For the reasons stated above, the Court will deny Cogley's IFP Application as moot, deny without prejudice his motion to appoint counsel, and deny his motion to rule on the IFP Application and motion to appoint counsel. An appropriate Order follows.

_____
**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 11/24/25
25-1938-01