**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES ANDREW COGLEY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:25-1938** |
| **v.** | : | **(JUDGE MANNION)** |
| **WELLPATH, LLC, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court are: (1) Defendant Commonwealth of Pennsylvania Department of Corrections ("DOC")'s Federal Rule of Civil Procedure 12(b)(6) motion to dismiss *pro se* Plaintiff James Andrew Cogley ("Cogley")'s claims against it and Pennsylvania State Correctional Institution ("SCI") Rockview ("SCI Rockview"); (2) Defendants Wellpath, LLC ("Wellpath"), Dr. Vernon Preston, David McKenna ("McKenna"), and Christina Brown ("Brown") (collectively, the "Wellpath Defendants")'s Rule 12(b)(6) motion to dismiss Cogley's complaint; (3) Cogley's second motion for a sixty-day extension of time to file certificates of merit ("COM" or "COMs") in support of his state-law professional negligence claims against Dr. Preston, McKenna, and Brown; and (4) Cogley's motion to substitute the Wellpath Liquidating Trust (the "Trust") for Wellpath as a nominal Defendant in this action. The Court has also screened Cogley's complaint, which also

claims against two unidentified SCI Rockview sergeants ("Sergeant Does") and two unidentified SCI Rockview correctional officers ("CO Does") (collectively, the "Doe Defendants"), pursuant to 28 U.S.C. §1915A.

For the reasons stated below, the Court will: (1) grant as unopposed Cogley's motion to substitute the Trust for Wellpath as a nominal Defendant; (2) dismiss with prejudice Cogley's claims for declaratory and injunctive relief as well as his Section 1983 official-capacity claims for monetary damages against the Doe Defendants for failure to state a claim under Section 1915A(b)(1); (3) dismiss without prejudice Cogley's Section 1983 claims against the Doe Defendants for failure to state a claim under Section 1915A(b)(1); (4) grant the DOC's motion to dismiss and dismiss with prejudice Cogley's Section 1983 claims against it and SCI Rockview; (5) grant the Wellpath Defendants' motion to dismiss insofar as they seek dismissal of Cogley's Section 1983 Eighth Amendment deliberate-indifference-to-serious-medical-needs claims against them for failure to state a claim upon which relief may be granted and dismiss without prejudice those claims; (6) deny the Wellpath Defendants' motion to dismiss in all other respects; (7) decline to exercise supplemental jurisdiction over Cogley's state-law claims; (8) grant Cogley leave to file an amended complaint; and

(9) deny as moot Cogley's second motion for an extension of time to file COMs.

## I. BACKGROUND

### A. Procedural History

Cogley, a convicted and former state prisoner,[1] commenced this action by filing a praecipe for a writ of summons against Wellpath, the DOC, and seven Doe Defendants, along with a motion for pre-complaint discovery, in the Court of Common Pleas of Centre County ("CCP") on August 16, 2023. *See* (Docs. 37-1 at 4; 37-3 at 1–11).[2] On August 31, 2023, the CCP issued

[1] According to the Pennsylvania Parole Board's Parolee Locator (https://inmatelocator.cor.pa.gov), Cogley was paroled from state incarceration on September 17, 2023.

[2] Under the Pennsylvania Rules of Civil Procedure, a plaintiff can initiate a civil action by filing a praecipe for a writ of summons or a complaint. *See* Pa. R. Civ. P. 1007 ("An action may be commenced by filing with the prothonotary: (1) a *praecipe* for a writ of summons, or (2) a complaint."). "A *praecipe* for [a] writ of summons contains no statement of facts, claims, rights, or prayer for relief, and it states merely: 'You are hereby notified that [name(s) of plaintiff(s)] has (have) commenced an action against you.'" *Loftus v. Decker*, 289 A.3d 1093, 1099 (Pa. Super. Ct. 2023) (quoting Pa. R. Civ. P. 1351). "The purpose of the *praecipe* for [a] writ of summons is 'to provide certainty as to the commencement of an action and remove a subsequent failure to effect service from consideration in determining whether the statute of limitations has been tolled.'" *Id.* (quoting *Sayers v. Heritage Valley Med. Grp., Inc.*, 247 A.3d 1155, 1161 (Pa. Super. Ct. 2021))). "The filing of a praecipe for a writ of summons . . . to commence an action is sufficient to toll the running of the statute of limitations, if the plaintiff makes a good faith effort to serve the writ . . . in compliance with the other applicable

*(footnote continued on next page)*

an order permitting Cogley to proceed *in forma pauperis* in the case. *See* (Doc. 37-4 at 1). On September 7, 2023, the CCP scheduled a hearing on Cogley's motion for pre-complaint discovery. *See* (Doc. 37-5 at 1). It appears that the Centre County Sheriff served the writs of summons upon the originally named Defendants on September 13, 2023. *See* (Doc. 37-9 at 1–3).

The CCP held a hearing on Cogley's motion for pre-complaint discovery on October 27, 2023, after which it entered an order denying the motion except to the extent that the DOC agreed to provide Cogley with his medical records from May 21, 2021, to the present, to the extent those records were still within its possession and control. *See* (Doc. 37-11 at 1–2). The CCP then held two pretrial conferences on November 22, 2023, and January 10, 2024. *See* (*id.*; 37-13 at 1; 37-14 at 1). On July 17, 2024, the CCP held another conference after which it issued an order directing the parties to notify it if they sought a status or pretrial conference. *See* (Doc. 37-17 at 1).

---

rules of court." *Devine v. Hutt*, 863 A.2d 1160, 1167 (Pa. Super. Ct. 2004). Additionally, upon the filing of a praecipe for a writ of summons, plaintiffs may serve discovery before filing their complaints. *See* Pa. R. Civ. P. 4003.8(a) ("A plaintiff may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party.").

Less than a week later, on July 23, 2024, Wellpath filed a praecipe for the Centre County Prothonotary to issue a rule upon Cogley to file a complaint within twenty days or risk the entry of a judgment of non pros. *See* (Doc. 37-18 at 1); *see also* Pa. R. Civ. P. 1037(a) ("If an action is not commenced by a complaint, the prothonotary, upon praecipe of the defendant, shall enter a rule upon the plaintiff to file a complaint. If a complaint is not filed within twenty days after service of the rule, the prothonotary, upon praecipe of the defendant, shall enter a judgment of non pros."). The following day, Cogley filed a second motion for pre-complaint discovery, in which he sought copies of x-ray images he believed were in the DOC's possession. *See* (Doc. 37-15 at 1–3). On August 1, 2024, Cogley filed a motion for an extension of time to file a complaint. *See* (Doc. 37-19 at 1–4).

The CCP heard oral argument on Cogley's motions on August 12, 2024, after which it entered an order which, *inter alia*: (1) required the DOC to obtain the films for all back x-rays Cogley received from 2020 to the present; (2) granted Cogley a sixty-day extension of time following his receipt of his x-ray films from the DOC to file a complaint; and (3) scheduled a pretrial conference for November 13, 2024. *See* (Doc. 37-21 at 1–2). On November 12, 2024, Cogley filed his second motion for an extension of time to file his

complaint. *See* (Doc. 37-22 at 1–3). The following day, the CCP held a pretrial conference and issued an order which (1) reiterated that Cogley had sixty days after receiving his x-ray films to file a complaint and (2) scheduled another pretrial conference for March 26, 2025. *See* (Doc. 37-23 at 1). On November 15, 2024, the CCP issued an order deeming Cogley's motion for an extension of time to file his complaint resolved through its November 13, 2024 order. *See* (Doc. 37-24 at 1).

On November 19, 2024, Wellpath filed a suggestion of bankruptcy and notice of stay relating to its filing of a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. *See* (Doc. 37-25 at 1–44). On January 21, 2025, Wellpath filed a notice with the CCP indicating that the bankruptcy court issued two orders confirming that the automatic stay under 11 U.S.C. §362 extended to "any Wellpath[-]related non-debtor," and requesting that the CCP stay Cogley's case until the bankruptcy court lifted the stay. (Doc. 37-26 at 1–25). Three days later, the CCP issued an order staying the case pending further order of court. *See* (Doc. 37-27 at 1).

Wellpath provided the CCP with a status update regarding the bankruptcy proceedings on May 30, 2025, in which it indicated that the stay could be lifted because the bankruptcy court confirmed Wellpath's plan of

reorganization. *See* (Doc. 37-28 at 1–2). On August 15, 2025, Wellpath filed a motion to dismiss all claims against it due to the discharge of all claims and causes of action against Wellpath Holdings, Inc. and its affiliated debtors, including Wellpath, which occurred through the confirmation of the Chapter 11 plan of reorganization. *See* (Doc. 37-29 at 1–6). Wellpath also filed a brief in support of this motion. *See* (Doc. 37-30).

On August 18, 2025, Cogley filed a motion in opposition to Wellpath's motion to dismiss in which he (1) asserted that he had only just received notice of the bankruptcy court's discharge order or the opportunity to opt in or out of the bankruptcy plan, (2) stated that he was in contact with the bankruptcy court about this issue, and (3) requested that the CCP not rule on Wellpath's motion until the bankruptcy court responded to him. *See* (Doc. 37-31 at 1–2). The following day, Cogley filed an amended motion in which he explained that he received a response from the bankruptcy court's case manager, and an opt-out hearing was scheduled for September 23, 2025. *See* (Doc. 37-32 at 1–2). Later that day, Wellpath filed a reply brief in further support of its motion to dismiss in which it argued that "[t]here is no opt-out provision concerning any claims against Wellpath, LLC [because a]ll claims against Wellpath, LLC have been discharged." (Doc. 37-33 at 1).

On August 27, 2025, the CCP issued an Order scheduling a hearing on Wellpath's motion to dismiss for September 30, 2025. *See* (Doc. 37-34 at 1). Approximately a month later, on September 24, 2025, Cogley filed his second amended motion in opposition to Wellpath's motion to dismiss based on the bankruptcy discharge. *See* (Doc. 37-35). In his motion, Cogley asserted that the bankruptcy court issued an order on September 23, 2025, which accepted his motion to opt out of the confirmation plan as timely filed. *See* (*id.* at 2, 5). He also asserted that the bankruptcy court's confirmation order and stay order "expressly recognize that holders of claims who timely opt out of the Third-Party Release are not barred or enjoined from pursuing claims against Released Parties, including employees of Wellpath" such as "John and Jane Doe Medical Providers." (*Id.* at 2–3.) As such, Cogley argued that he has "properly preserved his claims" against these Defendants and could maintain his claim against Wellpath "as a nominal defendant for purposes of establishing liability and recovering from applicable insurance or the Liquidating Trust, without violating the discharge injunction." (*Id.*)

On September 26, 2025, Cogley filed an additional exhibit he wanted to attach to his second motion in opposition to Wellpath's motion to dismiss, a motion seeking an order permitting him to proceed against Wellpath as a nominal defendant for the purpose of liquidating claims, and a motion for

appointment of counsel. *See* (Docs. 37-36 at 1–9; 37-37 at 1–18). Cogley attached a copy of his proposed complaint to his motion to appoint counsel. *See* (Doc. 37-37 at 5–18).

The CCP held oral argument on Wellpath's motion to dismiss on September 30, 2025. *See* (Doc. 37-38 at 1). It then issued an order on October 1, 2025, which denied the motion to dismiss Cogley's claims against the John and Jane Doe medical providers and held in abeyance the motion insofar as it sought dismissal of Cogley's claims against Wellpath pending further review in the bankruptcy court. *See* (*id.*). It also issued a second order denying Cogley's motion to appoint counsel. *See* (Doc. 37-39 at 1).

Cogley filed his complaint on October 6, 2025. (Doc. 37-40.) In his complaint, Cogley asserts Section 1983 Eighth Amendment deliberate-indifference-to-his-serious-medical-needs claims, Section 1983 failure-to-train-or-supervise claims, and Pennsylvania state-law tort claims, including, professional negligence/medical malpractice claims, against some or all of the following Defendants: (1) Wellpath, the DOC's third-party medical provider for SCI Camp Hill, SCI Rockview, and SCI Smithfield; (2) the DOC; (3) Dr. Preston, the Medical Director at SCI Rockview; (4) McKenna, a physician's assistant at SCI Rockview; (5) Brown, a medical provider at SCI Rockview; and (6) the Doe Defendants. *See* (*id.* at 1, 3–4). For relief, Cogley

seeks compensatory damages, punitive damages, declaratory relief, and "equitable relief to prevent similar violations in the future." (*Id.* at 16.)

The Wellpath Defendants removed this action from the CCP to this Court on October 15, 2025. (Doc. 1.) The following day, the Wellpath Defendants returned waivers of service of Cogley's complaint. (Doc. 3.)

On October 20, 2025, Cogley filed an application for leave to proceed *in forma pauperis* ("IFP Application"), a motion to appoint counsel, and a brief in support of his motion to appoint counsel. (Docs. 5–7.) Approximately one week later, the DOC returned a waiver of service of Cogley's complaint. (Doc. 9.)

On November 17, 2025, Cogley filed a motion seeking a ruling on his IFP Application and motion to appoint counsel. (Doc. 10.) A day later, the Wellpath Defendants filed a brief in opposition to Cogley's motion to appoint counsel. (Doc. 11.) The next day, Cogley filed a reply brief in further support of his motion to appoint counsel. (Doc. 12.)

This Court issued a Memorandum and Order on November 24, 2025, which, *inter alia*, denied Cogley's IFP Application as moot, denied his motion for rulings on his IFP Application and motion to appoint counsel, and denied without prejudice his motion to appoint counsel. (Docs. 13, 14.) On the same date, Cogley filed his first motion seeking an extension of time to file COMs

in support of his professional negligence/medical malpractice claims as required by Pennsylvania Rule of Civil Procedure 1042.3. (Doc. 15.) The Wellpath Defendants filed a brief in opposition to Cogley's motion for an extension of time to file COMs on November 26, 2025. (Doc. 16.) Later that day, Cogley filed his second motion to appoint counsel as well as a reply brief in further support of his motion for an extension of time to file COMs. (Docs. 17, 18.)

On December 2, 2025, the Wellpath Defendants filed a brief in opposition to Cogley's second motion to appoint counsel. (Doc. 19.) On the same date, Cogley filed a reply brief in further support of his motion to appoint counsel. (Doc. 20.) The Court entered an Order on December 18, 2025, which granted Cogley's motion for an extension of time to file COMs, established a deadline of February 16, 2026, for Cogley to file COMs, and denied without prejudice Cogley's second motion to appoint counsel. *See* (Doc. 22 at 2.)

The Wellpath Defendants and the DOC separately filed their Rule 12(b)(6) motions to dismiss Cogley's complaint on December 15, 2025, and December 23, 2025, respectively. (Docs. 21, 23.) On December 29, 2025, the Wellpath Defendants filed a brief in support of their motion to dismiss.

(Doc. 24.) The DOC filed a brief in support of its motion to dismiss on January 5, 2026. (Doc. 26.)

Cogley filed briefs in opposition to Defendants' motions to dismiss on January 5, 2026. (Docs. 25, 27.) The Wellpath Defendants filed a reply brief in further support of their motion to dismiss on January 19, 2025. (Doc. 28.) The same day, Cogley filed a motion for leave to file a sur-reply brief in support of his opposition to the Wellpath Defendants' motion to dismiss, along with a proposed sur-reply brief. (Doc. 29.) On January 20, 2026, the Court granted Cogley's motion and directed the Clerk of Court to docket the sur-reply brief attached to Cogley's motion as his sur-reply brief. (Doc. 30.) The Clerk of Court then promptly docketed Cogley's sur-reply brief. (Doc. 31.)

On February 14, 2026, Cogley filed his second motion for a sixty-day extension of time to file COMs. (Doc. 32.) Two days later, he filed a motion to substitute the Trust for Wellpath as a nominal Defendant in this case, along with a brief in support of his motion. (Doc. 33.) On February 17, 2026, Wellpath filed a response in opposition to Cogley's second request for a sixty-day extension of time to file COMs. (Doc. 34.) On the same date, Cogley filed a reply brief in further support of his motion for an extension of time to file COMs. (Doc. 35.)

The Court issued an Order on February 23, 2026, which, *inter alia*, directed the Wellpath Defendants to file copies of the entire docket sheet as well as all records and proceedings for Cogley's case while it was before the CCP. *See* (Doc. 36 at 4–5). The Wellpath Defendants promptly complied with this Order by filing the docket sheet and the other CCP filings on February 24, 2026. (Doc. 37.) On the same date, Cogley submitted a "Notice of Supplemental Authority and Submission of Bankruptcy Court Orders," in which he identifies and attaches two of the bankruptcy court's orders that he believes are relevant to the Court resolving Defendants' motions to dismiss and his motion to substitute. *See* (Docs. 38 at 1–3; 38-1 at 1; 38-2 at 1–5). All the pending motions are ripe for disposition.

**B. Cogley's Allegations in His Complaint**

Cogley alleges that he was committed to DOC custody at SCI Smithfield on or about May 18, 2021. *See* (Doc. 1-2 ¶15). During his intake, Cogley informed SCI Smithfield medical staff that he had a recent MRSA infection in his L5 spinal disc pocket in January 2021. *See* (*id.*). He also informed the medical staff that an MRI was ordered to "assess resolution of the infection"; however, he had yet to receive the MRI. (*Id.*)

Along with Cogley's MRSA disclosures, he asserts that he had a heart rate of 105 beats per minute ("BPM"), which meant that he had tachycardia.

*See* (*id.* ¶17). He alleges that "[t]achycardia is an early clinical indicator of systemic infection, particularly . . . in a patient with a known history of spinal MRSA." (*Id.*) He further alleges that "[t]his abnormal vital sign should have triggered further evaluation and an MRI to rule out active infection." (*Id.*)

Over the next few months, Cogley "repeatedly complained of worsening back pain, radiating symptoms, and mobility difficulties." (*Id.* ¶18.) Yet, Defendants failed to send him for an MRI or "escalate [his] care." (*Id.*)

By July 21, 2021, Cogley was incarcerated at SCI Camp Hill. *See* (*id.* ¶19). While there, he reported experiencing severe lower back pain, for which he was prescribed Methocarbamol and Prednisone. *See* (*id.*). It appears that this medication reduced Cogley's pain, but the pain returned once the medication ended, and "no diagnostic follow-up occurred." (*Id.*)

On August 13, 2021, Cogley was transferred to SCI Rockview, and he "immediately notified medical staff of his recurrent back pain and prior MRSA infection." (*Id.* ¶20.) Medical staff responded to Cogley's complaint by instructing him to submit a sick call request, and he did not "receive[] urgent follow-up." (*Id.*)

Cogley was examined by SCI Rockview medical staff on August 17, 2021, and he was prescribed Naproxen and Flexeril "without further diagnostic evaluation." (*Id.* ¶21.) Less than two weeks later, on August 30,

2021, Cogley reported "worsening symptoms, including radiating pain, constipation, and a heart rate of 114 BPM . . . ." (*Id.* ¶22.) Based on these symptoms, Brown ordered a lumbar x-ray, which was performed on September 1, 2021. *See* (*id.* ¶¶22, 23). The x-ray "showed disc space narrowing and endplate irregularities at L4-L5, with sequela consistent with discitis/osteomyelitis." (*Id.* ¶23.) In addition, the radiologist recommended that Cogley receive an MRT or CT scan to evaluate whether he had an active infection. *See* (*id.*). However, neither Brown nor Cogley's "subsequent treating providers . . . follow[ed] up on this recommendation." (*Id.*).

On September 2, 2021, Cogley "experienced severe pain, difficulty walking, sitting, or standing, and numbness in his left thigh." (*Id.* ¶25.) Despite these issues and the prior day's report from Cogley's x-ray, no one ordered an MRI or "escalat[ed]" his care. (*Id.*).

Cogley visited with McKenna on September 7, 2021. *See* (*id.* ¶26). During this visit, Cogley complained of "worsening pain radiating into both legs and visible mobility impairment." (*Id.* ¶26.) McKenna evaluated Cogley but did not order an MRI or CT scan; instead, he prescribed a "short Prednisone taper and returned [Cogley] to his unit." (*Id.*).

On September 13 and 18, 2021, Cogley "reported worsening symptoms" and pulses of 106 BPM and 134 BPM, respectively. (*Id.* ¶27.) He received Motrin and was returned to his unit. *See* (*id.*).

Cogley visited with medical again on September 20, 2021. *See* (*id.* ¶28). At the time, he had a pulse of 112 BPM, night sweats, and groin pain. *See* (*id.*). A blood draw was performed, and Cogley was initially returned to his unit. *See* (*id.*). However, the blood draw showed that Cogley had sepsis, so he was transported to an outside hospital for treatment. *See* (*id.*).

While at the hospital, Cogley was diagnosed with "abscesses in his spine, lungs, and groin, as well as bloodstream infection" and underwent emergency spinal surgery, which was later followed by "lengthy rehabilitation" and "antibiotic therapy at UPMC Passavant." (*Id.* ¶29.) Cogley claims that by the time hospital staff diagnosed him with sepsis, his spinal infection "had destroyed [his] L2 vertebra, compressed and fused L1 and L3, and caused permanent spinal deformity (secondary kyphosis, thoracolumbar)." (*Id.* ¶30.) As a result, he "suffers chronic pain and remains at risk of paralysis from minor injury." (*Id.*)

Cogley complains that "[t]hroughout this period," DOC staff observed his mobility deteriorating while he "struggled to walk, stand, and climb stairs." (*Id.* ¶31.) Yet, the Doe Defendants, who had the authority to adjust housing

assignments, "housed him on a fourth[-]tier cell, requiring him to climb multiple flights of stairs daily" and "expos[ing] him to substantial risk." (*Id.*)

He also complains that the DOC, despite having "notice of Wellpath's history of substandard care, lawsuits, and investigations nationwide, including cases involving delayed diagnoses and inmate deaths," contracted with Wellpath to provide medical services at its correctional facilities. (*Id.* ¶32.) In addition, Cogley asserts that the DOC "failed to implement policies ensuring radiology follow-ups and infection monitoring[.]" (*Id.*)

Based on these allegations, Cogley asserts the following claims: (1) Section 1983 Eighth Amendment deliberate-indifference-to-serious-medical-needs claims against Dr. Preston, McKenna, Brown, Wellpath, and the Doe Defendants, *see* (*id.* at 8–9); (2) state-law professional negligence/medical malpractice claims against Dr. Preston, McKenna, Brown, and Wellpath, *see* (*id.* at 11–12); (3) state-law negligence/gross negligence claims against the Doe Defendants, *see* (*id.* at 12); (4) state-law recklessness/willful misconduct claims against the Doe Defendants, *see* (*id.* at 13–14); and (5) Section 1983 and state-law claims for negligent supervision and failure to train against the DOC, SCI Rockview, and the Sergeant Does, *see* (*id.* at 14–15). Cogley indicates that Wellpath is named as only a "nominal defendant," *see* (*id.* ¶9), and he sues Dr. Vernon, McKenna, Brown, and the

Doe Defendants in their official and individual capacities. *See* (*id.* ¶¶11–13). He further acknowledges that he did not exhaust his administrative remedies within the DOC as to his claims in this case, but he contends that the Court should excuse him from exhaustion because those remedies were unavailable to him due to, *inter alia*, his illness, his hospitalization, and the inability of those administrative remedies to provide him with timely relief. *See* (*id.* at 9–10).

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

While the Court at this stage accepts the complaint's factual allegations as true, the Court does not do so to a plaintiff's legal conclusions. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a

> complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Pro se* filings must be construed "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). That means that the Court should "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* It does not mean, however, that *pro se* litigants may "flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## B. Screening of Complaints Under 28 U.S.C. §1915A

This Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). As part of this review, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* §1915A(b). Additionally, when screening claims under Section 1915A(b), the Court applies the standard

governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as described above. *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017).

### C. Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. Cogley's Motion to Substitute

Cogley moves to substitute the Trust for Wellpath as a nominal Defendant in this action. *See* (Doc. 33.) Wellpath has not filed a response to this motion as required by the Local Rules. *See* M.D. Pa. L.R. 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief . . . ."). As such, the Court deems Cogley's motion to be unopposed, will grant his motion, and will direct the Clerk of Court to substitute the Trust for Wellpath as a Defendant in this case. *See id.* ("Any party who fails to comply with this rule shall be deemed not to oppose such motion.").

### B. Screening Cogley's Complaint Under Section 1915A(a)

Because Cogley asserts claims against government employees, the Court has screened his complaint under Section 1915A(a). *See* 28 U.S.C. §1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or

employee of a governmental entity."); *see also Whiteside v. Hill*, No. 21-cv-806, 2022 WL 970586, at *2 (S.D. Ill. Mar. 31, 2022) (determining that removed complaint was subject to screening under Section 1915A); *Biron v. Carvajal*, No. 20-cv-2110, 2021 WL 3047250, at *35 (D. Minn. July 20, 2021) ("The Court agrees with Defendants that cases removed from state court are subject to screening under §1915A. Indeed, courts in this District have done so." (citations omitted)), *report and recommendation adopted*, 2021 WL 4206302 (D. Minn. Sept. 16, 2021), *aff'd*, No. 21-3615, 2022 WL 2288534 (8th Cir. June 24, 2022) (unpublished); *Johnson v. Bedwell*, No. 17-cv-53, 2017 WL 4539918, at *1 (S.D. Ind. Oct. 11, 2017) ("Although the filing fee was paid at the time this action was removed to this Court, this action is still subject to screening under 28 U.S.C. §1915A."); *Crooker v. Burns*, 544 F. Supp. 2d 59, 67 (D. Mass. 2008) (stating that "it is of no moment that the civil actions were originally filed in state court" and proceeding to screen removed complaint under Section 1915A). Based on this screening, the Court will (1) dismiss with prejudice Cogley's requests for declaratory and injunctive relief against Defendants; (2) dismiss with prejudice his Section 1983 official-capacity claims against the Doe Defendants, (3) dismiss without prejudice his Section 1983 deliberate-indifference-to-serious-medical-needs claims against the Doe Defendants in their individual capacities, and (4) dismiss

without prejudice his Section 1983 failure-to-train-or-supervise claims against the Sergeant Does in their individual capacities.

**1. Cogley's Requests for Declaratory and Injunctive Relief**

In his complaint, Cogley seeks "[d]eclaratory relief declaring that Defendants' acts and omissions violated [his] rights under the Eighth Amendment to the United States Constitution and Pennsylvania common law." (Doc. 1-2 at 16.) He also seeks "equitable relief to prevent similar violations in the future." (*Id.*)

As for Cogley's request for declaratory relief, the Court will dismiss this request with prejudice because he cannot seek a declaration pertaining to past conduct by Defendants. Declaratory relief is "prospective in nature," *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013), and therefore cannot be applied to seek "retrospective relief." *Bond v. DiClaudio*, No. 22-3010, 2023 WL 1990532, at *1 (3d Cir. Feb. 14, 2023) (unpublished). Thus, because Cogley seeks to address actions by Defendants that have already occurred, he has failed to state a plausible claim for declaratory relief in his complaint. *See, e.g.*, *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (unpublished) (explaining that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply

to proclaim that one party is liable to another").[3] Accordingly, the Court will dismiss Cogley's claim for declaratory relief in his complaint.

Regarding Cogley's request for injunctive relief, his release from incarceration almost three years ago moots any request for injunctive relief. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."). Although claims for prospective injunctive relief are not mooted "when a challenged action is (1) too short in duration 'to be fully litigated prior to its cessation or expiration'; and (2) 'there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again,'" *id.* (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993), these exceptions do not apply here because, *inter alia*, Cogley does not allege that there is a reasonable likelihood that he will be reincarcerated at SCI Rockview in the future. *See Ginyard v. Del-Prete*, No. 22-3213, 2023 WL 3967906, at *1 n.2 (3d Cir. June 13, 2023) (unpublished) ("Ginyard was transferred to a different facility in 2021. In the absence of any evidence that

[3] Furthermore, as explained *infra*, the Eleventh Amendment bars Cogley's request for declaratory relief against the DOC and SCI Rockview, and it also bars his request for declaratory relief against the Doe Defendants because his request is not prospective in nature. *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001) (explaining that Eleventh Amendment immunity does not bar claims against individual state officials for "prospective relief to remedy an ongoing violation of federal law").

there is a reasonable likelihood that Ginyard is likely to be incarcerated again at ACJ and subject to its COVID-19 mitigation policy, the District Court correctly dismissed Ginyard's claims for prospective relief."); *Garrett v. Wexford Health*, 938 F.3d 69, 80 & n.12 (3d Cir. 2019) (explaining that prisoner-plaintiff's release from incarceration mooted Section 1983 claims for prospective equitable relief); *Yeh v. U.S. Bureau of Prisons*, No. 18-cv-943, 2019 WL 3564697, at *5 (M.D. Pa. Aug. 6, 2019) (determining that prisoner-plaintiff's release from prison to home confinement mooted his claims for prospective injunctive relief). Therefore, the Court will also dismiss Cogley's claim for unspecified injunctive relief.

As for the type of dismissal, when dismissing all or part of a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must dismiss the complaint without prejudice to the plaintiff filing an amended complaint amendment unless any amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to

amend unless doing so would be futile). Here, the Court finds that it would be futile for Cogley, who is no longer incarcerated and not seeking any type of prospective declaratory or injunctive relief, to seek such relief through an amended complaint. Therefore, the Court will dismiss with prejudice Cogley's claims for declaratory and injunctive relief.

**2. Cogley's Section 1983 Official-Capacity Claims for Monetary Damages Against the Doe Defendants**

Cogley asserts his Section 1983 claims against the Doe Defendants in their individual and official capacities, and he indicates that he seeks monetary relief in this case. *See* (Doc. 1-2 at 4, 16). To the extent that Cogley asserts Section 1983 official-capacity claims for monetary damages against the Doe Defendants, the Court will dismiss these claims because these Defendants are not "persons" amenable to suit under Section 1983 when sued for monetary damages in their official capacities. Additionally, the Eleventh Amendment bars these claims.

Cogley cannot maintain his Section 1983 official-capacity claims for monetary damages against the Doe Defendants because they are not "persons" amenable to suit under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under [Section] 1983."). In addition, these claims are barred by the Eleventh Amendment, which provides that

"[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity . . . against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, *see* 71 P.S. §61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."), is entitled to the Commonwealth's Eleventh Amendment immunity. *See Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the

Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

The Doe Defendants are state officials for purposes of Section 1983 because Cogley alleges that they work for the DOC. A suit for monetary damages brought against a state official in their official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Thus, Cogley's Section 1983 official-capacity claims for monetary damages against the Doe Defendants constitute claims against the Commonwealth, which is immune from such claims under the Eleventh Amendment unless an exception to this immunity applies. *See Will*, 491 U.S. at 66, 70–71.

There are three narrow exceptions to Eleventh Amendment immunity, only two of which are potentially applicable to Cogley's Section 1983 official-

capacity claims for monetary damages against the Doe Defendants.[4] Those two exceptions are if the state waives its immunity or Congress exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S. at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). However, neither of these exceptions apply here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia*, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not intend to abrogate a state's Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (stating that "§1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on

---

[4] As for the third exception, the Eleventh Amendment does not bar a "suit[] against state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp.*, 271 F.3d at 503. However, as explained *supra*, Cogley does not (and cannot) seek prospective declaratory or injunctive relief against the Doe Defendants.

the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Accordingly, the Court will dismiss with prejudice Cogley's Section 1983 official-capacity claims for monetary damages against Defendants.[5]

### 3. Cogley's Eighth Amendment Individual-Capacity Claims Against the Doe Defendants

Cogley generally alleges that the Doe Defendants were deliberately indifferent to his serious medical needs because they confined him to a fourth-tier cell requiring daily stair climbing despite his mobility impairments causing him to "struggle[] to walk, stand, and climb stairs." (Doc. 1-2 ¶31.) These allegations are insufficient to state an Eighth Amendment deliberate indifference claim against these Defendants.

The Doe Defendants are non-medical prison officials; as such, "[a]bsent a reason to believe (or actual knowledge) that prison doctors or

---

[5] The Court recognizes that claims barred by the Eleventh Amendment ordinarily should be dismissed without prejudice even if the plaintiff may not reassert the claims in federal court, *see Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) ("Eleventh Amendment immunity is a threshold, nonmerits issue that does not entail any assumption by the court of substantive law-declaring power, and a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice." (internal quotation marks and citation omitted)). However, the Court will dismiss Cogley's Section 1983 official-capacity claims for monetary damages against the Doe Defendants with prejudice because the Doe Defendants are not "persons" amenable to suit under Section 1983 when sued for monetary relief in their official capacities.

their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor); *Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (unpublished) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Here, Cogley does not allege any facts that plausibly show that the Doe Defendants knew that he had a serious medical need simply because he had mobility issues (which Cogley does not describe). He also does not allege any facts demonstrating that the Doe Defendants had reason to believe or knew that the SCI Rockview medical staff were mistreating him. Cogley further does not allege that he ever complained to the Doe Defendants about being housed on the fourth tier of his cell unit. Overall, his allegations amount to a claim that the Doe Defendants should have, based on only their observations of his unspecified mobility issues and without any instruction from the medical staff, moved him

to a cell on a lower floor. Such allegations are insufficient to show that the Doe Defendants, as non-medical prison officials, were deliberately indifferent. *See, e.g.*, *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170–71 (3d Cir. 2015) (unpublished) (finding no deliberate indifference when non-medical prison officials refused to reassign Matthews to a bottom bunk despite his cast and crutches because they were entitled to rely on the medical personnel treating Matthews to impose any necessary restrictions). Accordingly, the Court will dismiss Cogley's Eighth Amendment deliberate-indifference-to-serious-medical-needs claims against the Doe Defendants for failure to state a claim. This dismissal will be without prejudice to Cogley filing an amended complaint.

**4. Cogley's Section 1983 Failure-to-Train-or-Supervise Claims Against the Sergeant Does in Their Individual Capacities**

Cogley also asserts a Section 1983 claim against the Sergeant Does based on their alleged failure to "train, supervise, and direct correctional officers under their authority to identify and appropriately respond to inmates with serious medical or mobility impairments." (Doc. 1-2 ¶68.) Regarding failure to train or supervise claims under Section 1983:

> [A] supervisor may be liable for [their] failure to train or supervise employees . . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1)

> that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,
>
> > In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program . . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.
>
> *Id.* at 390–91.

*Hernandez v. Dep't of Corr.*, No. 25-cv-2018, 2025 WL 3207519, at *4–5 (E.D. Pa. Nov. 17, 2025) (all but first two alterations in original).

In this case, Cogley's allegations fail to state a plausible failure-to-train-or-supervise claim against the Sergeant Does because he does not identify a policy or custom and, even if he did, he does not allege sufficient facts to show that there was an underlying constitutional violation. A supervisory

claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (unpublished). Cogley fails to allege a plausible constitutional violation by the CO Does in this case; consequently, his failure-to-train-or-supervise claims against the Sergeant Does also fail. Accordingly, the Court will dismiss Cogley's Section 1983 failure-to-train-or-supervise claims against the Sergeant Does. This dismissal will be without prejudice to Cogley filing an amended complaint.[6]

[6] Although the Court has also screened Cogley's state-law claims against the Doe Defendants, the Court will not address them in this Memorandum because, as explained *infra*, the Court will decline to exercise supplemental jurisdiction over Cogley's state-law claims after dismissing all his federal claims. However, the Court nevertheless notes that it appears that the Commonwealth's sovereign immunity bars Cogley's state-law claims against the Doe Defendants because their alleged acts do not fall under one of the nine negligence-based claims upon which the Commonwealth has waived its sovereign immunity. *See* 42 Pa. C.S. §8522(a)–(b). Moreover, Cogley incorrectly states in his complaint that he may bring claims for reckless or willful misconduct against the Doe Defendants pursuant to 42 Pa. C.S. §8550, *see* (Doc. 1-2 at 13), because that statute applies only to claims against municipal employees, the Doe Defendants are employees of a Commonwealth agency, and Cogley does not allege facts showing that the Doe Defendants were not acting within the scope of their employment during the events described in his complaint. *See* 42 Pa. C.S. §8550 ("In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of

*(footnote continued on next page)*

### C. The DOC's Motion to Dismiss

The DOC moves for dismissal of Cogley's (1) Section 1983 and Pennsylvania state-law claims against it and SCI Rockview because of its Eleventh Amendment immunity and (2) Section 1983 claims against it and SCI Rockview because they are not "persons" amenable to suit under Section 1983. *See* (Doc. 26 at 4–8). In response, Cogley concedes that the DOC and SCI Rockview have sovereign immunity from his claims seeking monetary damages and SCI Rockview is not a "person" for purposes of Section 1983 but argues that he may still maintain his claims for declaratory relief as well as his claims against any individual Defendants. *See* (Doc. 27 at 3, 5). Although Cogley correctly points out that the DOC does not address his claims against any individual Commonwealth Defendants in its motion, the Court will grant the DOC's motion because Cogley concedes that he cannot proceed with his Section 1983 claims against the DOC or SCI Rockview in this case, and the Court has already explained why he fails to

---

sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply."); 2 Pa. C.S. §101 (defining a "[l]ocal agency" as "[a] government agency other than a Commonwealth agency"); *Cooper v. Beard*, No. 06-cv-171, 2006 WL 3208783, at *16 (E.D. Pa. Nov. 2, 2006) ("[W]illful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment, including intentional acts which cause emotional distress.").

state a claim for declaratory relief. *See, e.g.*, *Nicholas v. SCI Smithfield*, No. 25-2187, 2025 WL 2807762, at *1 (3d Cir. Sept. 30, 2025) (unpublished) ("The District Court properly dismissed Nicholas's second amended complaint for failure to state a claim. SCI-Smithfield . . . is not a 'person' amenable to suit under §1983 . . . ." (internal citations omitted)); *Sirmons v. Dep't of Corr. Admin.*, Nos. 25-cv-510, 25-cv-804, 2025 WL 1583870, at *6 (M.D. Pa. June 4, 2025) (dismissing plaintiff's Section 1983 claims against the DOC because it was entitled to Eleventh Amendment immunity and was not a "person" amenable to suit under Section 1983); *Blair v. Carl*, No. 24-cv-211, 2024 WL 3850444, at *4 (M.D. Pa. Aug. 15, 2024) ("[T]o the extent that Blair has asserted a claim against SCI Rockview, he has failed to state a plausible claim because SCI Rockview is entitled to Eleventh Amendment immunity and is not a "person" amenable to suit under Section 1983."). The Court will also dismiss these claims with prejudice insofar as neither the DOC nor SCI Rockview are "persons" subject to suit under Section 1983.

### D. The Wellpath Defendants' Motion to Dismiss

The Wellpath Defendants move for dismissal of Cogley's Section 1983 and state-law claims against them for three reasons. (Doc. 24 at 6–26.) First, they argue that Cogley fails to plead plausible Eighth Amendment claims for deliberate indifference to his serious medical needs. *See* (*id.* at 9–18).

Second, they contend that Cogley fails to plead plausible state-law professional negligence claims against them because he has not filed a COM as required by Pennsylvania Rule of Civil Procedure 1042.3. *See* (*id.* at 18–19); *see also* (Doc. 28 at 4–5). Third, and finally, they assert that Cogley "cannot go forward with this action" because he failed to exhaust his administrative remedies. The Court will address each of these arguments in turn.

### 1. Cogley's Eighth Amendment Deliberate-Indifference-to-Serious-Medical-Needs Claims

#### a. Applicable Law

"The Eighth Amendment guarantees the right to be free from 'cruel and unusual punishments' while in custody." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). "A properly stated Eighth Amendment claim must [include] a subjective and objective element." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The subjective element requires evidence showing that the "defendant official act[] with a 'sufficiently culpable state of mind,'" *id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), while the objective element requires the plaintiff to demonstrate that the defendant official's conduct was "objectively 'harmful enough,' or 'sufficiently serious' to violate the Constitution." *Id.* (quoting *Wilson*, 501 U.S. at 298, 303).

For Cogley to state a plausible Eighth Amendment claim based on the failure to provide adequate medical treatment, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill*, 372 F.3d at 235; *see also*

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (explaining that complaints that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (pointing out that "disagreement between the prisoner and medical personnel over the proper course of treatment" does not show deliberate indifference (citing *Spruill*, 372 F.3d at 235)), *cert. denied sub nom. Pennsylvania v. Montanez*, No. 25-1073, 2026 WL 1718015 (U.S. June 15, 2026).

**b. Claim Against Dr. Preston**

The Wellpath Defendants contend that the Court should dismiss Cogley's deliberate indifference claim against Dr. Preston because he fails to include any allegations of Dr. Preston's personal involvement in any alleged constitutional violation in his complaint. *See* (Doc. 24 at 12 ("There is no allegation of ever seeing or treating with Dr. Preston. Dr. Preston did not have contact with Cogley and cannot be held liable under [sic] a violation of the Eighth Amendment.")). Cogley appears to acknowledge that Dr.

Preston never personally examined him but asserts that he can seek to hold Dr. Preston liable because Dr. Preston "was responsible for medical protocols, supervision, and escalation of care" at SCI Rockview. (Doc. 25 at 8–9.) Cogley also asserts that he needs discovery "to determine the extent of Dr. Preston's knowledge and involvement." (*Id.* at 9.)

The Court finds that Cogley has not pleaded any facts in his complaint showing Dr. Preston's personal involvement in any Eighth Amendment violation. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation:

> In the §1983 context, . . . the Supreme Court . . . require[s] a "showing of direct responsibility" by the named defendant and . . . eschew[s] any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights," *Rizzo v. Goode*, 423 U.S. 362, 376–77 [(1976)]—including theories of vicarious or respondeat superior liability, *see* [*Iqbal*, 556 U.S. at 676]; *see also Merklin v. United States*, 788 F.2d 172, 175 (3d Cir. 1986). Instead, "[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . (emphasis added). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677 . . . (emphasis added).

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (some alterations in original).

"A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual

knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting *Rode*, 845 F.2d at 1207)); *see also Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (explaining that Section 1983 defendants "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which [they] neither participated in nor approved"). Additionally, if a plaintiff seeks to hold a supervisory official liable for unconstitutional acts by their subordinates, the plaintiff's allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*,

372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

Here, Cogley does not plead Dr. Preston's personal involvement under either theory of supervisory liability. Cogley does not allege that Dr. Preston was a policymaker who established and maintained a policy, practice or custom which directly caused him constitutional harm. Moreover, he does not allege any facts showing that Dr. Preston personally participated in violating his rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations. Instead, and as evidenced by Cogley's argument in his opposition brief, he seeks to hold Dr. Preston liable simply because he was a supervisor, which is an impermissible basis upon which to hold Dr. Preston liable. In addition, it is wholly improper for Cogley to name Dr. Preston as a Defendant while hoping to discover the extent of Dr. Preston's involvement during discovery.[7] Instead, Cogley must plead

[7] Of course, if Cogley had not named Dr. Preston as a Defendant and discovered facts upon which he could assert a claim against Dr. Preston

*(footnote continued on next page)*

sufficient facts in his complaint to allow his claim against Dr. Preston to proceed to discovery, and Cogley fails to do that here. Therefore, the Court will grant the Wellpath Defendants' motion to dismiss to the extent that they seek dismissal of Cogley's Eighth Amendment deliberate-indifference claim against Dr. Preston. This dismissal will be without prejudice to Cogley filing an amended complaint because the Court cannot state at this time that any such amendment would be futile.

### c. Claim Against Brown

Defendants argue that Cogley fails to state a plausible claim against Brown because Cogley's allegation against Brown relates to a single medical visit during which Brown ordered a lumbar x-ray. The Court agrees that Cogley's allegations are insufficient to state a plausible deliberate-indifference claim against Brown.

Cogley alleges that when he reported to Brown about his "worsening symptoms, including radiating pain, constipation, and a heart rate of 114 BPM" on August 30, 2021, Brown ordered a lumbar x-ray. (Doc. 1-2 ¶22.) Cogley also complains that Brown did not order any "additional diagnostics despite the abnormal vital sign and worsening condition" and then failed to

---

during discovery, Cogley could file a motion seeking to amend his complaint at an appropriate time.

follow up on the radiologist's recommendation from Cogley's x-ray taken two days later, in which the radiologist recommended that Cogley receive an MRI or CT scan to evaluate for an active infection. *See* (*id.* ¶¶22, 23).

Viewed in isolation or collectively, these allegations do not plausibly show that Brown was deliberately indifferent to his serious medical needs. Cogley does not allege facts demonstrating that, at the time Brown ordered the x-ray, Brown knew of his need for additional medical treatment and intentionally refused to provide it. In fact, Brown provided Cogley with treatment by ordering the x-ray of his back. "[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Clark v. Doe*, No. 99-cv-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000); *see also Wisniewski v. Frommer*, 751 F. App'x 192, 195–96 (3d Cir. 2018) (unpublished) (pointing out that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment'" (quoting *Pearson*, 850 F.3d at 535)).

Additionally, Cogley does not allege that Brown delayed necessary medical treatment for a non-medical reason or prevented him from needed or recommended medical treatment. Although Cogley alleges that the radiologist recommended that he receive an MRI or CT scan to evaluate

whether he had an active infection, this recommendation was issued no less than two days after his visit with Brown, and Cogley does not allege facts showing that Brown became aware of the radiologist's recommendation and then failed to act on it.

In the end, Cogley must plead facts showing that Brown knew of and disregarded an excessive risk to his health or safety by failing to do more than order a lumbar x-ray on August 30, 2021. At this stage, Cogley's allegations sound in medical malpractice or as a disagreement regarding his proper medical treatment at that time. Accordingly, the Court will grant the Wellpath Defendants' motion to dismiss Cogley's Eighth Amendment claim against Brown for failing to state a claim upon which relief may be granted. This dismissal will also be without prejudice to Cogley filing an amended complaint because the Court cannot state at this time that any such amendment would be futile.

**d. Claim Against McKenna**

As with their arguments pertaining to Cogley's allegations against Brown, the Wellpath Defendants contend that Cogley fails to state a plausible deliberate indifference claim against McKenna because he alleges only a single interaction between them, during which McKenna provided medical care. *See* (Doc. 24 at 12). The Court agrees.

Cogley alleges that he presented to McKenna with "worsening pain radiating into both legs and visible mobility impairment" on September 7, 2021. (Doc. 1-2 ¶26.) Cogley admits that McKenna evaluated him, "prescribed a short Prednisone taper," and then returned Cogley to his unit. (*Id.*) Cogley complains that McKenna failed to act on the radiologist's September 1, 2021 recommendation that Cogley receive an MRI or CT scan to determine whether he had an active infection. *See* (*id.*).

These allegations are insufficient to state a plausible deliberate-indifference claim because, in the first instance, Cogley does not allege that McKenna knew about the radiologist's recommendation at the time he evaluated Cogley on September 7, 2021. McKenna could not have been deliberately indifferent to a recommended course of treatment unless he knew about the recommendation. Additionally, Cogley fails to allege facts showing that McKenna knew about Cogley's need for medical treatment but intentionally refused to provide it or delayed necessary medical treatment based on a non-medical reason. On the contrary, Cogley alleges that McKenna provided him with medical care by evaluating him and prescribing a Prednisone taper. Thus, like his allegations against Brown, Cogley's allegations against McKenna sound in professional negligence and not deliberate indifference. Accordingly, the Court will grant the Wellpath

Defendants' motion to dismiss Cogley's deliberate-indifference claim against McKenna. This dismissal will be without prejudice to Cogley filing an amended complaint because the Court cannot state at this time that any such amendment would be futile.

### 2. Failure to Exhaust Administrative Remedies

The Wellpath Defendants also move for dismissal of Cogley's claims against them due to his failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* (Doc. 24 at 19–26). Before addressing the Wellpath Defendants' supporting arguments, the Court notes that they appear to believe that Cogley's failure to exhaust, if shown, warrants dismissal of all claims asserted against them. *See* (*id.* at 26 ("Cogley did not exhaust his administrative remedies and cannot go forward with this action.")). They are mistaken because any failure to exhaust would apply only to Cogley's Section 1983 claims against them and not his state-law claims.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). This statutory language is clear insofar as the PLRA's exhaustion

requirement applies only to a prisoner's claims under Section 1983 "or any other Federal law." *Id.*; *see also Talley v. Pa. Dep't of Corr.*, No. 19-cv-1589, 2024 WL 1253626, at *6 n.12 (E.D. Pa. Mar. 21, 2024) ("The DOC Defendants appear to argue that this failure to exhaust bars all of Plaintiff's claims. But the exhaustion requirement does not sweep so far. As the plain text of the PLRA makes clear, the exhaustion requirement only applies to claims 'under section 1983 of this title, or any other Federal law.'" (quoting 42 U.S.C. §1997e(a))); *cf. Griffin v. Bryant*, 56 F.4th 328, 335 n.6 (4th Cir. 2022) ("By its terms, the PLRA's exhaustion requirement applies not only to claims pursued under §1983 . . . but also applies to claims initiated under 'any other Federal law,' including Griffin's claim under the ADA and the Rehabilitation Act." (quoting 42 U.S.C. §1997e(a))).

The Third Circuit Court of Appeals has not squarely addressed whether PLRA exhaustion applies to a prisoner's state-law claims. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (unpublished) (declining to "decide whether state law claims must be exhausted under the PLRA" because the district court "should have declined to exercise supplemental jurisdiction over those claims" upon dismissal of the plaintiff's federal claims). Nevertheless, other Judges in this District have concluded that the PLRA's exhaustion requirement does not apply to a prisoner-plaintiff's state-law

claims. *See, e.g.*, *Reyan v. Pa. Dep't of Corr.*, No. 18-cv-1485, 2020 WL 7049535, at *14 (M.D. Pa. Nov. 12, 2020) ("Based on the plain language of the PLRA, the exhaustion requirement does not apply to state law claims." (citing *Barrick v. Prison Health Sys./Med.*, No. 07-cv-163, 2008 WL 5225806, at *4 n.4 (W.D. Pa. Dec. 15, 2008))), *report and recommendation adopted*, 2020 WL 7048283 (M.D. Pa. Dec. 1, 2020); *Douglas v. Joseph*, No. 13-cv-1136, 2016 WL 561944, at *5 (M.D. Pa. Feb. 12, 2016) ("Although Douglas is proceeding in federal court, he is pursuing state-law claims. Thus, [S]ection [1997e(a)] does not apply."), *aff'd*, 656 F. App'x 602 (3d Cir. 2016) (unpublished). Additionally, it appears that every court of appeals or district court which has addressed this issue has concluded that PLRA exhaustion does not apply to a prisoner-plaintiff's state-law claims. *See Pierce v. Rowland*, No. 20-5731, 2021 WL 3929549, at *6 (6th Cir. Sept. 2, 2021) (unpublished) ("Since the PLRA's exhaustion requirement applies to actions brought under federal law, Pierce's state law claims . . . remain viable." (citation omitted)); *McDaniel v. Meisner*, 617 F. App'x 553, 556 n.3 (7th Cir. 2015) (unpublished) ("[T]he exhaustion requirements of the [PLRA] do not apply to state-law claims." (citing 42 U.S.C. §1997e(a))); *Brady v. Ill. Dep't of Corr.*, No. 23-cv-295, 2024 WL 4263103, at *6 (S.D. Ill. Sept. 23, 2024) ("The PLRA's exhaustion requirements apply only to claims brought under federal

law – not to a pure state law claim such as [the] negligence claim here."); *Sodemann v. Melnick*, No. 22-cv-374, 2024 WL 2110140, at *2 (W.D. Wis. May 10, 2024) ("As for plaintiff's state-law claims, the PLRA's exhaustion requirement does not apply."); *Shaheed-Muhammad v. Dipaolo*, 393 F. Supp. 2d 80, 92 n.5 (D. Mass. 2005) (rejecting defendants' argument that "the strictures of the PLRA apply to plaintiff's state law claims"); *Nunez v. Goord*, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) ("As [the plaintiff's] cause of action alleging negligence does not invoke §1983, or any other federal law, it is not subject to §1997e(a)'s exhaustion requirement."). This Court finds these other decisions to be persuasive; as such, even if the Court determined that Cogley failed to exhaust his administrative remedies while at SCI Rockview, it would not warrant dismissal of his state-law claims against the Wellpath Defendants.

Turning now to Defendants' exhaustion arguments, the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions. *See Rinaldi v.*

*United States*, 904 F.3d 257, 265 (3d Cir. 2018); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006))); *Jones v. Bock*, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); *Booth v. Churner*, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. §1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" *Downey*, 968 F.3d at 305 (alteration in original) (quoting *Woodford*, 548 U.S. at 88). "These applicable procedural rules are supplied by the individual prisons." *Id.* (citations omitted); *see also Jones*, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim"); *Woodford*, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical

procedural rules"); *Spruill*, 372 F.3d at 222 (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"). A prisoner's failure to follow a prison's procedural rules will result in a procedural default of their claims. *See Spruill*, 372 F.3d at 230–32 (concluding that PLRA's exhaustion requirement includes procedural default component); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010) (pointing out that *Spruill* held "that the PLRA includes a procedural default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures"). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to them. *See Rinaldi*, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting *Woodford*, 548 U.S. at 93)). "Available means capable of use; at hand." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks omitted). "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates

from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey*, 968 F.3d at 305 (alterations in original) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271.

Prisoners do not have an affirmative duty to plead administrative exhaustion. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints."); *see also Small*, 728 F.3d at 268 ("Failure to exhaust [administrative remedies] is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." (citations omitted)). Nevertheless, "[a] District Court may dismiss an inmate's claim pursuant to Rule 12(b)(6) if the 'failure to exhaust under the PLRA is apparent from the face of the complaint.'" *Timmons v. Bohinski*, No. 25-1516, 2026 WL 2331684, at *2 (3d Cir. Aug. 12, 2026) (quoting *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024) and citing *Jones*, 549 U.S. at 216).

In this case, it is apparent from the face of Cogley's complaint that he did not file grievances regarding his Section 1983 claims against the

Wellpath Defendants because he admits as much in his complaint. *See* (Doc. 1-2 ¶42 ("Plaintiff's failure to file grievances concerning medical claims does not bar this action because administrative remedies were effectively unavailable.")). On the other hand, it is not apparent from the face of Cogley's complaint that he failed to exhaust those claims because he alleges that his administrative remedies were unavailable to him for several reasons. *See* (Doc. 1-2 at ¶¶ 41, 43). If Cogley can ultimately show that his administrative remedies were unavailable, the Court would deem any failure to exhaust to be excused. This is a determination that this Court cannot make at this early stage in the proceedings.

The Court recognizes that it could, as the Wellpath Defendants request, convert this portion of their motion to dismiss into a motion for summary judgment. *See* (Doc. 24 at 19); Fed. R. Civ. P. 12(d) (providing that "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"); *see also Greer v. Smith*, 59 F. App'x 491, 492 (3d Cir. 2003) (unpublished) (determining that the district court erred in considering affidavit outside the pleadings to resolve defendant's Rule 12(b)(6) motion raising a

failure to exhaust defense, without first converting the motion to dismiss into a motion for summary judgment and providing an opportunity for plaintiff to engage in discovery). In this instance, however, the Court will decline to convert this part of the Wellpath Defendants' motion to dismiss into a motion for summary judgment so the Court could consider the failure-to-exhaust defense at this time. Considering that the Court will grant Cogley leave to file an amended complaint, converting the Wellpath Defendants' motion would unnecessarily delay this case even though neither the Court nor the Wellpath Defendants know what Cogley will decide to include in an amended complaint. Accordingly, the Court will exercise its discretion and decline to convert this part of Defendants' motion to dismiss into a motion for summary judgment. *See Escalera v. Harry*, No. 15-cv-2132, 2016 WL 6694502, at *7 (M.D. Pa. Sept. 28, 2016) (indicating that district court has discretion to decide whether to convert motion to dismiss into a motion for summary judgment, recommending that motion to dismiss not be converted into a motion for summary judgment, and providing detailed explanation in support of recommendation), *report and recommendation adopted*, 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016); *see also Yuratovich v. U.S. Dep't of Just.*, No. 13-cv-5651, 2015 WL 8328328, at *3 (D.N.J. Dec. 8, 2015) (stating that if defendant presents documents outside the pleadings in connection with a

Rule 12(b)(6) motion to dismiss, the "Court has discretion to either convert the motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss").

#### 3. Failure to Plead Plausible Medical Malpractice or Professional Negligence Claims

Although the Wellpath Defendants move to dismiss Cogley's professional negligence/medical malpractice claims because he never filed COMs in accordance with Pennsylvania Rule of Civil Procedure 1042.3, *see* (Doc. 24 at 18–19), they go on to state that they will "deal[] with [this issue] separately at a later date." *See* (*id.*). Because the Wellpath Defendants do not actually argue for dismissal in their supporting brief and instead indicate that they will address it on a later date, the Court will not grant this part of their motion.

### E. Cogley's State-Law Claims

Through the Court's Section 1915A screening of Cogley's complaint as well as its resolution of Defendants' motions to dismiss, the Court will dismiss all his federal claims, albeit with leave to file an amended complaint as to his Section 1983 Eighth Amendment deliberate-indifference-to-serious-medical-needs-claims against Dr. Preston, McKenna, Brown, and the Doe Defendants as well as his Section 1983 failure-to-train-or-supervise claims

against the Sergeant Does. Thus, Cogley currently has no viable federal claim before the Court supporting the exercise of supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (stating that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). The Court finds that consideration of "judicial economy, convenience, and fairness to the parties" does not "provide an affirmative justification" for retaining jurisdiction over Cogley's state-law claims. *See Hedges*, 204 F.3d at 123. Therefore, the Court will decline to exercise supplemental jurisdiction over Cogley's state-law claims.[8] If Cogley

[8] There also does not appear to be an independent basis for jurisdiction over this state-law claim pursuant to the diversity jurisdiction statute, 28 U.S.C. §1332(a). Cogley does not sufficiently allege the citizenship of the parties insofar as he pleads only his place of incarceration and Defendants' places of employment. See (Doc. 1-2 ¶¶8–14); *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (stating that an individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain indefinitely); *Pierro v. Kugel*, 386 F. App'x 308,

*(footnote continued on next page)*

does not file an amended complaint in accordance with the directions, the Court will presume that he intends to stand on his complaint, *see Weber v. McGrogan*, 939 F.3d 232, 240 (3d Cir. 2019) (discussing stand-on-complaint doctrine), and will remand this action to the CCP for further proceedings on his state-law claims against Dr. Preston, McKenna, Brown, and the Doe Defendants.

### F. Cogley's Second Motion for a Sixty-Day Extension to File COMs

Cogley moves for a second sixty-day extension of time to file COMs to support his professional negligence claims against Dr. Preston, McKenna, and Brown. (Doc. 32.) The Wellpath Defendants oppose this motion, noting that Cogley has been unable to obtain COMs for approximately six hundred days so far and arguing that "[i]t is unfair to [them] to have these claims hanging over their heads." (Doc. 34 at 2.)

In the first instance, the Court empathizes with the parties' respective positions on this issue. Cogley indicates that even though he has diligently attempted to secure COMs, his *pro se* status has hindered those attempts, even when he reached out to his treating neurologist. *See* (Doc. 32 at 2–3).

309 (3d Cir. 2010) (unpublished) ("[T]he domicile of a prisoner before [their] imprisonment presumptively remains [their] domicile during [their] imprisonment."). In addition, even though Cogley is no longer incarcerated, his address of record shows that he appears to be domiciled in Pennsylvania.

On the other hand, the Wellpath Defendants focus on the length of time that Cogley has been litigating this action and his inability to secure COMs during that extensive period.

Although the Court recognizes that Cogley has had significant time to acquire COMs, his obligation to secure the COMs in this case did not start until he filed his complaint on October 6, 2025. *See* Pa. R. Civ. P. 1042.3(a) (providing that plaintiffs asserting professional negligence claims must file COMs "with the complaint or within sixty days after filing of the complaint"). Additionally, even though Cogley's continued diligence in attempting to secure COMs will not suffice to establish good cause to indefinitely extend the time for him to file COMs, for purposes of his second request for a sixty-day extension, the Court finds that Cogley sets forth good cause for the requested extension in his motion. However, there remains a dispositive issue relating to Cogley's motion that neither party addresses in their submissions.

On January 20, 2026, which was approximately a month prior to Cogley's motion and the Wellpath Defendants' response in opposition, the United States Supreme Court held that a state's requirement that a plaintiff asserting a medical malpractice or professional negligence claim "submit an affidavit from a medical professional attesting to the suit's merit" does not

apply in federal courts. *See Berk v. Choy*, 607 U.S. 187, 189 (2026). This Court previously discussed the Supreme Court's reasoning in *Berk* as well as *Berk*'s applicability to professional negligence claims filed in this District, and the Third Circuit generally, as follows:

> In *Berk*, the plaintiff advanced a medical malpractice claim under Delaware law, but the district court dismissed it for failure to comply with a provision of Delaware law that, like Rule 1042.3, requires a plaintiff to file a [COM] from a licensed professional attesting to the merits of a malpractice claim. [*Id.* at 190.] The Third Circuit affirmed, holding that the Delaware law was substantive law that needed to be applied by federal courts. [*Id.* at 191.]
>
> The Supreme Court reversed. The Court first noted that when a provision of the Federal Rules of Civil Procedure governs a particular procedural question, any contrary state rules of procedure are displaced and may not be enforced in federal court. [*Id.* at 192 (first citing *Hanna v. Plumer*, 380 U.S. 460, 469–74 (1965); then citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). The Court then held that the relevant Delaware law conflicts with Federal Rule of Civil Procedure 8(a)(2), which "requires only a short and plain statement of the claim" for a complaint to state a claim upon which relief may be granted. [*Id.* at 193–94] (internal quotation marks omitted) (*quoting Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). The Court noted that Rule 8 "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims" at the pleading stage. [*Id.* at 194.] The Court held that Delaware's law, by requiring plaintiffs to file a [COM] with a medical malpractice claim, requires more than is required by Rule 8 and therefore conflicts with the rule. *Id.* The [C]ourt therefore held that the law does not apply in federal court. *Id.*
>
> Under Berk, Pennsylvania Rule of Civil Procedure 1042.3 plainly cannot apply in federal court. Just like the Delaware law at issue

> in *Berk*, Rule 1042.3 requires a plaintiff in a malpractice or professional negligence claim to file a certificate of merit. *See* Pa. R. Civ. P. 1042.3. By requiring the plaintiff to provide more than a short and plain statement of her claim, the law conflicts with Federal Rule of Civil Procedure 8. *See Berk*, [607 U.S. at 194–95.] Thus, the court concludes that Rule 1042.3 no longer applies in federal court and that the Third Circuit's contrary decisions in [*Schmigel v. Uchal*, 800 F.3d 113, 118 (3d Cir. 2015) and *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011)] have been abrogated by *Berk*.

*Allen v. Voorstad*, No. 25-cv-106, 2026 WL 184276, at *3 (M.D. Pa. Jan. 23, 2026).

Based on the above, *Berk* forecloses the application of the COM requirement in Pennsylvania Rule of Civil Procedure 1042.3 to Cogley's professional negligence claims against the individual Wellpath Defendants in this Court. As such, it moots Cogley's second motion for an extension of time to the extent that Cogley continues to prosecute his case in this Court. Accordingly, the Court will deny as moot Cogley's second motion for an extension of time to file COMs.[9]

[9] As the Court has already explained, if Cogley declines to file an amended complaint, the Court will remand his case back to the CCP for further proceedings. The Court does not intend for the resolution of Cogley's second motion for an extension of time to file COMs to prejudice him in any way should the CCP determine that he remains obligated to produce COMs to proceed with his professional negligence claims. The Court's decision here merely reflects the Supreme Court's conclusion that the COM-requirement conflicts with the pleading requirements in the Federal Rules of Civil Procedure and, as such, Cogley does not require COMs to pursue his professional negligence claims in this Court.

## IV. CONCLUSION

For the reasons stated above, the Court will: (1) grant as unopposed Cogley's motion to substitute the Trust for Wellpath as a nominal Defendant; (2) dismiss with prejudice Cogley's requests for declaratory and injunctive relief; (3) dismiss with prejudice Cogley's Section 1983 official-capacity claims against the Doe Defendants; (4) dismiss without prejudice Cogley's Section 1983 Eighth Amendment deliberate-indifference-to-serious-medical-needs claims against the Doe Defendants; (5) dismiss without prejudice Cogley's Section 1983 failure-to-train-or-supervise claims against the Sergeant Does; (6) grant the DOC's motion to dismiss and dismiss with prejudice Cogley's Section 1983 claims against it and SCI Rockview; (7) grant the Wellpath Defendants' motion to dismiss insofar as they seek dismissal of Cogley's Section 1983 Eighth Amendment deliberate-indifference-to-serious-medical-needs claims against them for failure to state a claim upon which relief may be granted and dismiss without prejudice those claims; (8) deny the Wellpath Defendants' motion to dismiss in all other respects; (9) decline to exercise supplemental jurisdiction over Cogley's state-law claims; (10) grant Cogley leave to file an amended complaint; and

(11) deny as moot Cogley's second motion for an extension of time to file COMs. An appropriate Order follows.[10]

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/31/26.
25-1938-02

[10] This Order will provide Cogley with additional instructions should he decide to file an amended complaint.